# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **ESTATE OF LUKE O. STEWART, SR.** ) | |
| **Deceased, by Mary Stewart, Administrator,** ) | |
| **c/o Friedman and Gilbert** ) | |
| **55 Public Square, Ste 1055** ) | |
| **Cleveland, OH 44113** ) | No. |
|         **Plaintiff,** ) | |
| ) | Honorable |
| ) | |
|     vs. ) | Jury Demand |
| ) | |
| **CITY OF EUCLID,** ) | |
| **545 E 222nd St.** ) | |
| **Cleveland, OH 44123** ) | |
| ) | |
|     -and- ) | |
| ) | |
| **Euclid Police Officer** ) | **COMPLAINT** |
| **MATTHEW RHODES, #39** ) | |
| **545 E 222nd St.** ) | |
| **Cleveland, OH 44123** ) | |
| ) | |
|     -and- ) | |
| ) | |
| **Euclid Police Officer** ) | |
| **LOUIS CATALANI, #47** ) | |
| **545 E 222nd St.** ) | |
| **Cleveland, OH 44123** ) | |
|         **Defendants.** ) | |

      Euclid police officer Rhodes brazenly shot and killed an unarmed 23-year-old Luke O. Stewart on March 13, 2017. Mr. Stewart was asleep in his car – and had not been accused of committing any crime – when he was approached by Defendants Rhodes and Catalani. Within

1

moments, Defendant Rhodes entered into Luke's car and beat, tased, and shot Luke multiple times, killing him.

Luke left behind two small children, his mother, siblings, cousins and multiple family members. His death devastated his community and his family. This is a civil rights and wrongful death action on behalf of the Estate of Luke Stewart.

The Defendant officers are responsible for killing Luke Stewart without justification. Further, the unconstitutional policies and practices of the Euclid Police Department have resulted in the use of excessive and unconstitutional force against too many people, in particular African American people, including Luke Stewart. The City is therefore also liable for his death.

**JURISDICTION AND VENUE**

1. The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 *et seq*; the Judicial Code, §§ 1331 and 1343(a); and the Constitution of the United States.

2. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to plaintiff's claims also occurred in this judicial district.

**PARTIES**

3. Mary Stewart was appointed Administrator of the Estate of Luke Stewart, deceased, by the Probate Division of the Circuit Court of Cuyahoga County, Ohio, Case No. 2017-EST-227260, on September 5, 2017.

4. Mary Stewart is a resident of Cuyahoga County, Ohio, and is Luke Stewart's mother.

5.  Defendants Rhodes and Catalani were, at the time of this occurrence, duly appointed police officers employed by the City of Euclid and engaged in the conduct complained of in the course and scope of their employment with the City of Euclid.

6.  At the times material to this complaint, Defendants Rhodes and Catalani were acting under color of state law, ordinance, and /or regulation. They are sued in their individual capacities.

7.  Defendant City of Euclid is a municipal corporation, duly incorporated under the laws of the State of Ohio, is the employer and principal of Defendants Rhodes and Catalani, and is responsible for the policies, practices and customs of its Police Department and City Council.

**FACTS**

8.  Luke Stewart, a 23-year old man at the time of his death, was the father of two young children. He was a son, grandson, brother, cousin and uncle to many in his large and loving family.



"Photograph A" – Luke Stewart

9. In the early morning hours of March 13, 2017, Luke Stewart was asleep in his car, which was parked on South Lakeshore Boulevard, in Euclid, Ohio.

10. Euclid police received a complaint of a suspicious vehicle parked on South Lakeshore. The caller did not suggest that the car or driver were involved in committing any crime or that the person in the vehicle possessed a weapon. Instead, she only stated that the car was unfamiliar and had been parked, idling, for approximately 20 minutes.

11. Defendants Catalani and Rhodes were dispatched to respond to the call.

12. Even Before Defendant Rhodes even arrived on the scene, Defendants Rhodes and Catalani decided to pull the driver, who was later identified as Luke Stewart, out of the car. Rhodes and Catalani made this decision without any investigation and without any reasonable suspicion or probable cause to justify this seizure.

13. Defendant Catalani approached the vehicle before Defendant Rhodes arrived and observed the driver asleep, with his seat back reclined.

14. Defendant Rhodes arrived and parked his car very close to Luke's car, front bumper to front bumper.

15. The Defendant officers approached Luke's car. Defendant Catalani startled Luke awake by knocking at the window.

16. Defendant Catalani then opened the driver's side door and grabbed at Luke, trying to pull him out of the car. At the same time, Defendant Rhodes opened the passenger side door, partially entered Luke's car – without reasonable suspicion or probable cause – and reached across the passenger seat while attempting to push Luke out of the car.

17. Luke, startled by Defendants Rhodes' and Catalani's unexpected attack, attempted to drive away.

4

18. Instead of disengaging, Defendant Rhodes stayed inside the car while Luke slowly drove down South Lakeshore.

19. From the passenger seat of Luke's car, Defendant Rhodes brutally beat Luke.

20. Rhodes punched Luke in the face with his fist, electrocuted him six times with a taser, and struck Luke in the face with the taser. This attack culminated in Rhodes fatally shooting Luke multiple times with his Glock pistol, killing him.

21. After Defendant Rhodes mortally wounded Luke Stewart, Luke's car came to rest in a lot near Milton and 222nd Street. The map below shows the route Luke's car traveled. "Photograph B," a still image taken from a Euclid Police dash camera, shows Luke's car after it came to a stop.





"Photograph B"

22.  Luke Stewart was unarmed when Rhodes shot and killed him. No weapon was recovered from his person or his vehicle.

23.  Luke Stewart was pronounced dead at Euclid Hospital on March 13, 2017.

24.  Luke Stewart sustained five gunshot wounds – three to his chest, one through his neck, and one through his wrist - which caused massive and fatal internal injuries.

25.  Defendant Catalani had the duty and opportunity to intervene to protect Luke Stewart and did nothing to assist him or prevent the shooting.

26. Within a matter of days after he shot and killed Luke Stewart, and without the opportunity to fully investigate his actions, Defendant City of Euclid permitted Defendant Rhodes to return to full patrol duty.

27. Defendants jointly agreed and/or conspired with one another, and others, to complete false, misleading, and incomplete official reports and to give a false, misleading, and incomplete version of the events to certain superiors and the public. In order to cover up their misconduct, they falsely claimed that Luke placed them in imminent fear of bodily harm.

28. All of the actions of the Defendants and their named and unnamed co-conspirators, as set forth above and below, were taken jointly, in concert, and with shared intent.

29. As a direct and proximate result of the Defendants' misconduct, Luke suffered from terror and pain inflicted upon him, including severe personal injuries and extreme emotional distress, during the course of this brutal attack and as he died.

30. As a direct and proximate result of the Defendants' misconduct, Luke's minor children, his mother, sister, brother, family members and his community suffered and continue to suffer, *inter alia*, severe grief, injury, pain and suffering, mental distress, loss of love, affection, society, companionship, consortium, pecuniary loss, and expenses, as well as other injuries as a result of Luke's death.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Unconstitutional Seizure

31. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

32. The actions of Defendants Rhodes and Catalani, as alleged in the preceding paragraphs, violated Luke Stewart's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process

under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

33. The actions of Defendants Rhodes and Catalani as alleged in this complaint were the direct and proximate cause of the constitutional violations set forth above and of Luke Stewart's injuries.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 *Monell* Policy Claim Against Defendant City of Euclid

34. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

35. Despite the facts and circumstances surrounding the shooting of Luke Stewart that clearly demonstrate that the actions of the Defendants Rhodes and Catalani, which culminated in the shooting death of Luke Stewart, were unreasonable and unlawful, upon information and belief, the City of Euclid has failed to effectively investigate their actions or impose any discipline on the Defendant police officers.

36. The actions of Defendants Rhodes and Catalani, as alleged above, were taken pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Euclid and its police department.

37. At all times material to this complaint the Defendant City of Euclid and its police department had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

  a. the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of Euclid police officers who engage in unjustified use of excessive and unreasonable force, including unjustified shootings;

  b. the police code of silence;

  c. the encouragement of excessive and unreasonable force;

  d. the failure to properly investigate the use of excessive and unreasonable force against civilians, particularly African-Americans, by City of Euclid police officers; and/or

      e. the failure to properly train and supervise City of Euclid police officers with regard to discharging their weapons at civilians, particularly at African-Americans.

38. Recently, a slew of allegations of excessive force against Euclid police officers have arisen, some which are captured on video.

39. The aforementioned *de facto* policies, practices, supervision, training and customs of the Euclid Police Department include a pattern of acts of excessive use of force, and other reckless behavior leading to harmful consequences to citizens

40. The Euclid Police Department has engaged in little or no meaningful disciplinary actions in response to this pattern of misconduct, thereby creating a culture or climate that members of the department can escape accountability with impunity.

41. This pattern is the moving force behind the conduct of the Defendant officers in stopping, engaging and shooting Luke Stewart, which was not an isolated incident of unconstitutional policing within the City of Euclid by its officers.

42. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct about which they are aware, including the use of excessive and unreasonable force and the unjustified discharge of an officer's weapon, despite their obligation under police regulations to do so. The code of silence also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have used excessive force and/or engaged in unjustified shootings of civilians.

43. The *de facto* policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are

interrelated and exacerbate the effects of each other to institutionalize police lying and immunize police officers from discipline.

44. That the unconstitutional actions of the Defendants were part of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

45. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injury and death of Luke Stewart and the injury to his Estate, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that their false, incomplete and misleading reports would go unchallenged by these supervisors and fellow officers, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

46. But for the belief that they would be protected, both by fellow officers and by the City of Euclid police department, from serious consequences, Defendants Rhodes and Catalani would not have engaged in the conduct that resulted in the shooting and death of Luke Stewart.

47. The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant officers to commit the acts alleged in this complaint against Luke Stewart, and therefore acted as the moving forces behind and the direct and proximate causes of the injuries to Luke Stewart and his Estate.

48. Additionally, the failure to properly hire, train, supervise, discipline, monitor, control, counsel and/or transfer the Defendant officers was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Luke Stewart and his Estate.

49. Among other things, these policies, practices and customs alleged in this complaint encouraged the use of excessive and unreasonable force and the unjustified shooting, other police misconduct, the fabrication of evidence, the intimidation of witnesses, and the making of false, incorrect and misleading statements and reports, and maintenance of a code of silence. These policies, practices, and customs, therefore, are and were, separately and together, the moving forces behind, and the direct and proximate causes of, the unconstitutional acts committed by the Defendants in this case and the injuries to Luke Stewart and his Estate.

### THIRD CLAIM FOR RELIEF
### State Law Claim for Wrongful Death Pursuant to Ohio R.C. § 2125.02

50. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

51. Luke Stewart is survived by his heirs. Luke Stewart's heirs have suffered and will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, companionship, guidance and protection, as well the grief and sorrow from the loss of the love and affection of and for their loved one, and otherwise suffered damages to their detriment.

52. The Defendant officers willfully and maliciously shot and killed Luke Stewart.

53. The Defendant officers otherwise acted negligently, intentionally, and with malice and willful, wanton, and/or reckless indifference in committing the acts alleged in this complaint, which resulted in the injuries and wrongful death of Luke Stewart and his Estate.

54. As a direct and proximate result of the actions of the defendants in this complaint, Luke Stewart died of gunshot wounds on March 13, 2017, subjecting the defendants to liability pursuant to Ohio R.C. § 2125.02.

## FOURTH CLAIM FOR RELIEF
### State Law Claim for Intentional Infliction of Emotional Distress

55. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

56. Defendants Rhodes and Catalani engaged in extreme and outrageous behavior as alleged in this complaint.

57. Defendants Rhodes and Catalani intended such conduct to inflict severe emotional distress upon Luke Stewart and his heirs and knew that their conduct would cause Luke Stewart and his family severe and serious emotional distress, which was of a nature that no reasonable person could be expected to endure.

58. Defendants' conduct did, in fact, cause such distress.

59. As a direct and proximate result of Defendant police officers' outrageous conduct, Luke Stewart and his Estate were injured and suffered actual damages.

## FIFTH CLAIM FOR RELIEF
### State Law Claim for Assault and Battery

60. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

61. The actions of Defendants Rhodes and Catalani towards Luke Stewart created in him the fear and apprehension of an imminent, harmful, and offensive touching and constituted a harmful touching, knowingly and without legal justification.

## SIXTH CLAIM FOR RELIEF
### State Claim for Willful, Wanton, and Reckless Conduct

62. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

63. Defendants Rhodes and Catalani failed to exercise due care, and acted with a malicious purpose and/or in bad faith and/or in a willful and/or wanton and/or reckless manner while engaged in police functions and activities, including but not limited to the excessive and

unreasonable use of force and unjustified shooting of Luke Stewart, which culminated in his death.

64. Each of the individual Defendants, as set forth herein, engaged in negligent, reckless and/or willful and/or wanton conduct such that they are not entitled to the immunities set forth in O.R.C. § 2744.01 *et seq.*

65. As a direct and proximate result of the misconduct of the defendant officers, Luke Stewart and his survivors and next of kin have suffered injuries and damages.

## SEVENTH CLAIM FOR RELIEF
### (Survivorship Action)

66. All of the foregoing paragraphs are incorporated by reference and re-alleged as though fully set forth here.

67. Plaintiff further claims that as a direct and proximate result of the willful, wanton, reckless, and unconstitutional conduct of the Defendants as alleged herein, individually and/or jointly, and/or by and through their agents and/or employees, Luke Stewart was caused to suffer mental anguish and conscious physical pain and suffering prior to his death, for which compensation is sought.

68. The Defendant officers owed Luke Stewart a duty of care, they breached that duty, and their breach of duty was the proximate cause of Luke Stewart's death.

69. The Plaintiff brings this survivor action pursuant to Ohio Revised Code § 2305.21.

## DAMAGES

70. As a direct and proximate result of the acts set forth in this complaint, Luke Stewart sustained extreme and intense pain and fear for his life prior to his death.

71. As a further direct and proximate result of the wrongful death of Luke Stewart, his survivors and/or heirs and family have suffered damages, including but not limited to, the loss of his support, services, and society, including lost companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, as well as pecuniary losses.

72. As a further direct and proximate result of the wrongful death of Luke Stewart, the Decedent's survivors and/or heirs have suffered damages, including but not limited to, grief, depression, and severe emotional distress.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands that judgement be entered in her favor on all counts and prays the Court award the following relief:

A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Plaintiff's decedent's rights and his wrongful death;

B. Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct;

C. Declaratory and injunctive relief against the City of Euclid enjoining policies, practices, and customs shown to encourage the use of excessive and unreasonable force and the extrajudicial shooting of civilians, particularly African-Americans, and ordering the institution of policies, procedures, and training for the Euclid Police Department to bring them into compliance with constitutional standards;

D. Attorneys' fees and the costs of this action pursuant to 42 U.S.C. Section 1988; and

E. All other relief which this Honorable Court deems equitable and just.

**A JURY IS REQUESTED TO HEAR THIS MATTER.**

*/s/ Sarah Gelsomino*
SARAH GELSOMINO (0084340)
TERRY H. GILBERT (0021948)
JACQUELINE GREENE (0092733)
Friedman & Gilbert
55 Public Square, Suite 1055
Cleveland, OH 44113-1901
Telephone: (216) 241-1430
Facsimile: (216) 621-0427
E-Mail: sgelsomino@f-glaw.com
tgilbert@f-glaw.com
jgreene@f-glaw.com

Attorneys for Plaintiff